UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 05-94 (JRT/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION AND ORDER** |
| 01 - Anthony Heppner, | |
| 02 - Thomas Anderson, | |
| Defendants. | |

Mike Cheever, Assistant U.S. Attorney, for the Government.
Dean S. Grau, Esq., for Defendant Heppner.
Thomas G. Dunnwald, Esq., for Defendant Anderson.

The above referenced matter came before the undersigned United States Magistrate Judge on September 28, 2005, on Defendants' Joint Motion to Dismiss the Indictment [#54]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, this Court recommends that the Defendants' Motion be denied, but Orders the Government to return the documents at issue to the Defendants.

### I.  FINDINGS OF FACT

**A.    Introduction**

Defendants Anthony Heppner and Thomas Anderson were charged by indictment on March 22, 2005, with twenty Counts of Mail Fraud in violation of Title 18 U.S.C. §§ 2 and 1341. (See Indictment [#1]). The Indictment alleges that Defendants formed an investment club called Skyward Group and solicited individuals to become members and investors. It alleges that from January 1999 until February 2001, Defendants aided and abetted each other to devise a scheme to defraud and

obtain money and property by means of materially false and fraudulent representations, and that Defendants knowingly caused to be sent and delivered by the United States Postal Service mail for the purpose of executing such a scheme.

The Court has previously ruled upon Defendants' Pretrial Motions, including a prior Motion to Dismiss. See [##13, 45, 46, 47, 79]. At the time Defendants submitted their current Motion to Dismiss, on August 30, 2005, trial was scheduled for September 26, 2005. Defendants' current Motion arises from the Government's search of Defendant Anderson's residence on August 24, 2005.

### B. Court Testimony

#### 1. Defendant Anderson

Defendant Anderson testified at the hearing before the Court on September 28, 2005. He stated that sometime during the summer, federal agents attempted to serve him and his wife, at their residence in Eau Claire, Wisconsin, with subpoenas to testify before the Grand Jury in Minneapolis and to produce handwriting exemplars. Defendant refused to accept service and the agents left the subpoenas on the garage floor. Later that week, FBI Agent Rice called Defendant to inquire whether he received the subpoenas. He told her that he never received the subpoenas "because the dog ate them." Agent Rice stated she would fax a copy of the subpoena to Defendant.

Defendant testified that on July 20, 2005, he and his wife traveled to Minneapolis in response to the subpoena. They reported to the United States Attorney's Office and met with Postal Inspector Mary Agnew. He stated that he told the receptionist and Agnew that they had brought the requested documents, which were Skyward Group membership records. He stated that they requested to produce the documents to the Grand Jury but Agnew told them the Jury did not need to see them. He stated he took the documents back to his house and kept them there.

Defendant Anderson testified that he was indicted for actions arising from his involvement

with Skyward Group. He stated that at the time the search warrant was executed, on August 24, 2005, he and Defendant Heppner had an appointment to meet with their attorneys on August 26, 2005, to discuss their defense. In preparation for that meeting, Defendant Anderson's attorney had told him to collate the documents he believed relevant to the defense. He stated that at the time the warrant was executed, he had been in the process of preparing the documents seized at the request of his attorney. While the warrant was being executed, Defendant Anderson called his attorney, who advised him to tell the Agents that the documents being seized were privileged under the attorney work product doctrine. He stated that he told the Agents executing the search that the documents were privileged. He stated that many of the records seized had been in his house since 1999.

### 2. Mrs. Anderson

Defendant's wife testified that she and her husband came to Minneapolis in July in compliance with the subpoena. She stated that they brought all requested documents, about five or six boxes, with her that day. She stated that she and Mr. Anderson told the receptionist and Inspector Agnew that they wanted to show the documents to the Grand Jury.

### 3. Mary Agnew

Mary Agnew testified on September 28, 2005. She stated that she has been a Postal Inspector for approximately two years and that she and FBI Agent Ruth Hovey were the two Case Agents on Defendants' case. On June 20, 2004, Agnew attempted to serve the Andersons with the subpoenas to appear before the Grand Jury. See Govt. Ex. 1-3, Subpoenas. The subpoenas requested Defendant Anderson to produce documents referring or relating to Skyward Group, Threshold Benefits Club, and Invest Sonora. See Govt. Ex. 1, Subpoena.

Agnew stated that she met with the Andersons in the United States Attorney's Office on July 20, 2004. She testified that there was no discussion regarding records and that she believed

Defendant would not produce records because he was asserting a Fifth Amendment privilege against production.

Agnew stated that she was the Affiant on the search warrant for Defendant Anderson's residence. Based on information she received from a "confidential source" (CS), she applied for and obtained the search warrant from the United States District Court in the Western District of Wisconsin on August 23, 2005, and executed the warrant on August 24. See Govt. Ex. 4, Search Warrant. She stated that at the time she secured the warrant, she knew Defendants were represented. She arranged for a "taint reviewer," Postal Inspector Gloria Faust, to review any confidential or privileged documents during the execution of the search warrant to determine whether the document should be seized, and if so, to ensure that the document was segregated from the non-privileged documents seized. She testified that Faust received no instruction on how to determine whether a document was privileged or not, and stated that she herself did not know upon what basis Faust made any such determination.

During the execution of the search warrant, Agents recovered documents from Defendant Anderson's basement, garage, bedrooms and home offices. The Court viewed video of Defendant Anderson's house taken during the search. See Govt. Ex. 5, Video. Agnew testified that Skyward records were found interspersed within irrelevant documents throughout Defendant's house. She stated that in total, the Agents seized fifteen boxes of documents. See Govt. Exs. 7-21. She stated that one box contained the documents Faust segregated because of the possibility that they could be privileged.

Agent Agnew testified that after the Agents had completed the search, Defendant Anderson told the Agents that the documents were attorney-client records that were to be used at a meeting with his attorney. Agnew stated that the seized documents she reviewed were not communications

between Defendant Anderson and his attorney, and that she did not believe the documents were privileged. Instead, the documents were Skyward Group records dating from the 1990's.

### 4. Defendant Anthony Heppner

Defendant Heppner testified that he was a member of Skyward Group management and that Defendant Anderson is the custodian of Skyward Group records. He stated that the Government had previously subpoenaed documents while he was represented by an attorney. His attorney at the time asserted the Fifth Amendment privilege against production.[1]

## II. CONCLUSIONS OF LAW

Defendants move to dismiss the Indictment. They argue that the Government's action – the execution of the search warrant shortly before trial and two days before the planned meeting between Defendants and their lawyers – violated their Fourth Amendment rights to be free of unreasonable searches and seizures, their Fifth Amendment rights to fundamental fairness and due process, their Sixth Amendment right to the effective assistance of counsel, and their First Amendment right of meaningful access to the courts. See Def. Mem. [#55] p. 3. Though Defendants allege these various violations, they focus almost entirely on how the Government's actions have violated their Sixth Amendment right to counsel.[2] Specifically, the Defendants argue that the Government seized

---

[1] The Court makes no factual findings whether Defendant Anderson presented the requested documents at the July meeting with Inspector Agnew. The Government construed Defendant Anderson's refusal to accept service of the Subpoena and his statements to Agent Rice to be an assertion of the Fifth Amendment privilege against production. The Government never took steps to compel production. The Court concludes that it is immaterial whether Defendant thereafter sought to produce the records.

[2] Defendants make no argument with respect to their First or Fifth Amendment claims in their Post-Hearing Memorandum [#66]. The Court is aware of no authority under either the First or Fifth Amendments that would entitle Defendants to any relief in the circumstances here. Defendants challenge the validity and execution of the search warrant under the Fourth Amendment. They argue generally that under the circumstances of this case, the search was unreasonable. Defendants direct the Court to no authority for the proposition that dismissal of the Indictment is the proper remedy for a Fourth Amendment violation. As Defendants are clear that they are not seeking to suppress the evidence (the traditional remedy for a Fourth Amendment violation), and purport to reserve their right to make such a motion at a later time, (see

documents protected by the attorney-client privilege and the work product doctrine, and that the seizure of the privileged documents they sought to use in their defense renders their representation ineffective, and that the ineffectiveness can only be remedied by dismissal.

> **A.   Assuming Without Deciding that a Sixth Amendment Violation Occurred, the Defendants are Not Entitled to Dismissal of the Indictment**
>
> > **1.   The Search Implicates the Defendants' Sixth Amendment Right to Counsel**

The Government's concedes that the execution of the search warrant in the circumstances of this case implicates the Defendants' Sixth Amendment right to effective assistance of counsel, but contends that it put into place sufficient procedures to protect the Defendants' Sixth Amendment rights. On August 23, 2005, approximately one month before the case was scheduled for trial, federal agents sought a search warrant for Defendant Anderson's home. In her testimony, Case Agent Agnew admitted that, at the time she applied for the search warrant, she knew Defendants were represented by counsel and that the trial had originally been scheduled for September 26, 2005. She denied knowing that the Defendants planned to meet with their attorneys on August 26, 2005, two days after the search warrant was executed.

Agent Agnew acknowledged in her Affidavit submitted in support of the warrant, that she believed that the execution of the warrant so close to trial might implicate the Sixth Amendment. In her Affidavit she stated that she had received information from the confidential source that Defendant Anderson kept Skyward Group documents and "'legal stuff' having to do with conspiracy [and] federal courts" in his home. See Govt. Ex. 4, Aff. p. 9. She disclosed that the agents

---

Defendants' Joint Reply at pp. 1-2), the Court expresses no opinion on the Fourth Amendment issue, other than to conclude that there is nothing in the Fourth Amendment that would entitle Defendants to dismissal of the Indictment in the circumstances of this case.

conducting the search would designate one agent not involved in the case to segregate any documents that "appear[ed] to relate to attorney-client privilege or work product information." <u>Id.</u> p. 10.  She proposed that such information would be segregated for later review by a court or a "taint team" to determine whether the documents were in fact privileged or otherwise protected, with "the exact procedure for review [to be] determined by a court in a later proceeding."  Agent Agnew included no information in the Affidavit regarding how the proposed "taint" inspector, during the execution of the search, would determine whether the documents were or were not privileged.  Nor did Agent Agnew discuss with Agent Faust, the actual "taint" inspector, prior to the execution of the search, how she should determine whether the documents were privileged.  During the execution, Agent Faust designated one box of documents as potentially privileged.  The record is silent with respect to why Faust believed these documents were potentially privileged.  Agent Agnew has not reviewed the documents Faust identified as potentially privileged.  While she did begin to review, on the night of the search, the balance of the documents seized, she stopped all review once Defendant's filed their Motion to Dismiss.

The Court concludes that although the execution of the search warrant under these circumstances so close to trial implicates the Defendants' Sixth Amendment rights, for the reasons set forth below, the Court need not decide whether a Sixth Amendment violation occurred.

### 2. Defendants Have Failed to Establish Any Prejudice Which Could Not Be Remedied by an Appropriate Protective Order

The Sixth Amendment provides that an accused shall enjoy the right "to have the Assistance of Counsel for his defense." This right is meant to assure fairness in the adversary criminal process. Gideon v. Wainwright, 372 U.S. 335, 344 (1963). To establish a Sixth Amendment violation, a criminal defendant must show two things: first, that the government knowingly intruded into the attorney-client relationship; and second, that the intrusion demonstrably prejudiced the defendant or created a substantial threat of prejudice. United States v. Singer, 785 F.2d 228, 234 (8th Cir. 1985) citing Weatherford v. Bursey, 429 U.S. 545 (1976); United States v. Morrison, 449 U.S. 361, 366 (1980).

Identification of a Sixth Amendment violation alone does not require dismissal of the Indictment. The interests supporting the Sixth Amendment right, meant to assure fairness in the adversary criminal process, must be reconciled with society's competing interest in prosecuting criminal conduct. Id. In Morrison, the Supreme Court held, despite the government's deliberate violation of defendant's sixth amendment rights, that the district court erred in dismissing the indictment because Morrison had not demonstrated any prejudice from the violation. 449 U.S. at 365. The Court held that the appropriate course when faced with a Sixth Amendment violation was not dismissal, but a remedy tailored to the injury suffered: "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." Id.

In Morrison, the defendant had retained private counsel to represent her in a criminal proceeding. Id. at 362. Thereafter, two agents of the Drug Enforcement Agency, aware that she had been indicted and had retained counsel, sought to obtain her cooperation in a related investigation.

They met and conversed with her without the knowledge of her counsel. During the conversation the agents disparaged defendant's counsel and indicated that defendant would receive a stiff jail term if she did not cooperate. The agents visited defendant again, but at no time did she agree to cooperate with them. Defendant continued to rely upon the services of the attorney whom she had retained. Id. at 362-63. The Court, assuming arguendo that the defendant's Sixth Amendment rights were violated, held that absent a showing of any adverse consequence to the representation defendant received or to the of the proceedings leading to her conviction, dismissal of the indictment was not appropriate. Id. at 366-67.

In Weatherford, Bursey, a criminal defendant, brought suit under 42 U.S.C. section 1983, claiming his Sixth Amendment rights were violated during his criminal proceeding because Weatherford, an undercover co-defendant, had allegedly communicated to his superiors and prosecuting officials the defense strategies and plans which he had learned at his meetings with Bursey and Bursey's counsel. 429 U.S. at 547-49. The Court found that there was no Sixth Amendment violation. The Court noted that the district court expressly found that Weatherford communicated nothing to his superiors or the prosecution about Bursey's trial strategy. Id. at 556. The Court further noted that Weatherford's testimony for the prosecution revealed nothing that transpired at the meetings he attended between Bursey and his counsel; that none of the Government's evidence was obtained as a consequence of Weatherford's participation in those meetings; and that Weatherford had not attended the meetings to intentionally intrude upon the attorney-client relationship to learn Bursey's defense strategies, but had attended because Bursey had invited him and because he needed to maintain his undercover status. Id. at 555-58. The Court held that there being no tainted evidence, communication of defense strategy to the prosecution, and no purposeful intrusion by Weatherford, there was no violation of the Sixth Amendment. Id. at 558.

Finally, in Singer, criminal defendant Singer argued that the prosecution's acquisition and review of his attorney's trial strategy file and subsequent prejudicial statements to the press resulted in a denial of his Sixth Amendment right to effective assistance of counsel. 785 F.2d 228. Five days before his retrial, the prosecution disclosed that it had received, from a non-government source, copies of 56 documents from Singer's attorney-client file. During trial, the media, quoting the Minneapolis Police Chief and the Chief Judge, reported that the contents of the file showed that Singer's father had committed perjury at Singer's first trial with the approval of Singer's attorney. Similar statements issued from the United States Attorney's Office. Id. at 230. The Eighth Circuit upheld the District Court's determination that though Singer's Sixth Amendment rights had been violated, the violation did not warrant dismissal of the indictment. The Eighth Circuit held that under Morrison, the District Court properly fashioned a remedy that removed any prejudice to Singer on retrial that might have resulted from the governmental misconduct and the resulting constitutional violation instead of dismissing the case. Id. at 234-237. The court held that the remedial order for the government to return documents from Singer's attorney-client file, and prohibiting the government attorney with knowledge of the attorney-client documents from participating in retrial of case, adequately shielded Singer from any demonstrable prejudice resulting from the government's intrusion into the attorney-client file and restored his Sixth Amendment protections. Id. at 237.

In Morrison, Weatherford, and Singer, the Courts clearly held that absent demonstratable prejudice, even deliberate violations of the Sixth Amendment do not compel dismissal of the Indictment. Assuming without deciding that the Government's actions in this case violated Defendants' Sixth Amendment rights, Defendants are not entitled to a dismissal of the charges against them because they have failed to demonstrate how they are prejudiced by the execution of

the search warrant. Morrison, 449 U.S. at 366; Weatherford, 429 U.S. at 557-58; Singer, 785 F.2d 228 at 236. Assuming that a Sixth Amendment violation occurred here, as in Morrison, Weatherford and Singer, the Defendants are not entitled to a dismissal of the Indictment if a less drastic remedy can eliminate any potential prejudice.[3] Defendants here have not demonstrated how they are prejudiced by the Sixth Amendment violation they claim occurred. As the Court concludes that a less drastic order can alleviate the only prejudice the Court perceives, the Motion to dismiss the Indictment must be DENIED.

### B. The Government Must Copy and Deliver to Defendants All the Documents It Seized

Though Defendants are not entitled to dismissal of the Indictment, the Court concludes that they are entitled to an Order to protect their right to prepare their defense. First, those documents the Government has segregated as potentially privileged must be returned to the Defendants without the Government's inspection. See Singer, 785 F.2d at 236; National City Trading Corp. v. United States, 635 F.2d 1020, 1026 (2d Cir. 1980) (finding it appropriate to order the return of improperly seized attorney-client or work product material).

With respect to the balance of the documents, the Court concludes that, regardless of whether the documents were privileged,[4] it is clear the Defendants intended to use the documents in the

---

[3] The Court rejects the Government's suggestion that the creation of a "taint team" as described in the search warrant application was adequate to protect the Defendants' Sixth Amendment rights. The Government's proposal is not unlike assigning the fox to guard the henhouse.

[4] Assuming without deciding that Defendant Anderson had collected and organized the documents at his counsel's direction, it is undisputed that counsel had not yet reviewed the documents and had not yet selected any for closer inspection or otherwise done anything with the documents that would reveal their mental processes or work product. See e.g., Shelton v. American Motors, 805 F.2d 1323 (8th Cir. 1986) (attorney cannot be compelled to disclose which documents she identified, examined, and selected in preparation for litigation from client's voluminous files, as it would reveal attorney work product). Defendant's own gathering of documents, even at counsel's direction, does not result in the documents being protected by the attorney client privilege or work product doctrine.

preparation of their defense. Included among the seized documents are ones Defendants intended to review with their lawyers at a meeting that had been scheduled to occur two days after the execution of the search warrant. The Government's seizure of the documents clearly interfered with counsel's preparation of the defense. Execution of the search warrant so close to trial which denied counsel the opportunity to review the documents with their clients in confidence could potentially prejudice Defendants' right to a fair trial. This potential prejudice, however, can be alleviated by an Order that the documents be photocopied at the Government's expense for the Defendants.

The Court rejects the Government's suggestion that making the documents available to counsel for inspection is enough. It is undisputed that counsel had scheduled a defense preparation meeting with their clients for August 26, 2005. Review of the documents was contemplated. The seizure of the documents by the Government frustrated counsel's effort in this regard. The Court concludes that counsel should have the opportunity to review the documents with their clients in confidence, without having to do so at the Government's office. While the Court's Order is authorized by Federal Rule of Criminal Procedure 16(a)(1)(E), the Order issued herein is more than just a discovery order. It is an Order designed to prevent a Sixth Amendment violation. As such, the Court Orders the Government to copy the documents at its own expense and deliver a complete set of the documents in the order in which they are currently organized to the Defendants. See United States v. Freedman, 688 F.2d 1364, 1366 (11th Cir. 1982) (trial court has considerable discretion regarding discovery matters under Rule 16, including the discretion to determine which parties should bear the cost of copying documents).

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss the Indictment [#54] be **DENIED.**

### IV.   ORDER

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that the Government must return those documents it has identified as "potentially privileged" without inspection, and that the Government must copy the remaining documents at its own expense and deliver the copies to the Defendants in the order in which they are currently organized.

DATED: October 12, 2005.                              s/ *Franklin L. Noel*
                                                                      FRANKLIN L. NOEL
                                                                      United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **October 31, 2005**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **October 31, 2005,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.