UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>(1) ANTHONY HEPPNER and<br>(2) THOMAS ANDERSON,<br><br>Defendants. | Criminal No. 05-94 (JRT/FLN)<br><br><br>**ORDER ADOPTING REPORT<br>AND RECOMMENDATION OF<br>MAGISTRATE JUDGE** |

      Frank Magill, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

      Dean S. Grau, **GRAU LAW OFFICE**, 80 South Eighth Street, Suite 1919, Minneapolis, MN 55402, for defendant Heppner.

      Thomas G. Dunnwald, **DUNNWALD & PETERSON PA**, 412 South Fourth Street, Suite 1150E, Minneapolis, MN 55415, for defendant Anderson.

      Defendants are charged with twenty counts of mail fraud, in violation of 18 U.S.C. §§ 2 and 1341.  Defendants jointly move to dismiss the indictment.  Following a hearing, United States Magistrate Judge Franklin L. Noel recommended denying defendants' motion.  The defendants jointly object to the Magistrate Judge's Report and Recommendation dated October 12, 2005.  The Court has conducted a *de novo* review of defendants' objections pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.2(b),

and for the reasons set forth below, overrules defendants' objections and adopts the Report and Recommendation of the Magistrate Judge.

## BACKGROUND

The Indictment alleges that defendants Heppner and Anderson formed an investment club called Skyward Group and solicited individuals to become members and investors. It further alleges that from January 1999 until February 2001, defendants aided and abetted each other to devise a scheme to defraud and obtain money and property by means of materially false and fraudulent representations, which defendants knowingly caused to be sent and delivered by the United States Postal Service mail for the purpose of executing the scheme.

On June 20, 2004, Postal Inspector Agnew attempted to serve Anderson with a subpoena to appear before the Grand Jury. The subpoena requested Anderson to produce documents referring or relating to various entities, including the Skyward Group. Agnew met with Anderson at Agnew's office on July 20, 2004. Anderson claims he brought the documents with him and offered them to Agnew at that time, but that Agnew refused them, and Anderson brought the documents back home with him. Agnew denies that Anderson brought any documents with him, and also states that Anderson informed her that he would not be producing the documents. Regardless of what happened at that meeting, it is undisputed that Agnew did not take possession of the documents or review them at that time.

On August 23, 2005, Agnew sought a search warrant for Anderson's home. At that time, the trial was scheduled to begin in just over a month – on September 26, 2005. When Agnew applied for the search warrant, she knew defendants were represented by counsel, and that the trial had originally been scheduled for September 26, 2005. Moreover, Agnew acknowledged in her affidavit submitted in support of the warrant application that she believed that the execution of the warrant so close to trial might implicate the Sixth Amendment.

The search warrant was executed on August 24, 2005. At that time, and unbeknownst to Agnew, Anderson and Heppner had scheduled a meeting with their lawyers for August 26, 2005, to discuss their defense. In preparation for that meeting, Anderson's lawyer had told him to gather the documents he believed relevant to the defense. At the time the documents were seized, Anderson had been in the process of preparing them at the request of his lawyer.

The search of Anderson's home yielded fifteen boxes of documents, which were seized and removed from Anderson's home. One of the boxes contained documents that were determined to be "potentially privileged" by the "taint" inspector.[1] At a hearing

---

[1] Agnew arranged for a "taint team," led by Postal Inspector Gloria Faust as "taint reviewer," to review any confidential or privileged documents uncovered during the execution of the search warrant to determine whether the document should be seized, and if so, to ensure that the document was segregated from the non-privileged documents seized. Agnew testified at the hearing before the Magistrate Judge that Faust received no instruction on how to determine whether a document was privileged or not, and stated that she herself did not know upon what basis Faust made any such determination. During the execution, Faust designated one box of documents as potentially privileged. The record is silent with respect to why Faust believed these documents were potentially privileged.

(Footnote continued on next page.)

before the Magistrate Judge, Agnew testified that she had not reviewed any of the potentially privileged documents. Agnew also testified that she began to review the remaining documents, but that she stopped all review once defendants filed their motion to dismiss. It is the Court's understanding that the prosecution is currently in possession of all the documents seized, except for two documents, which were returned to defendants by Assistant United States Attorney Cheever. (Mem. Opp'n Defs.' Objections, 5.) At the time of the hearing before the Magistrate Judge, the prosecution had refused to return the rest of the seized documents to defendants or to provide them with copies, although it had offered to let defendants inspect the documents. The prosecution has informed the Court that it has now provided defendants with copies of all the documents. (*Id.* at 5 n.4.)

Defendants now object to the Magistrate Judge's report and recommendation, arguing that the search of Anderson's residence and seizure of documents violated

---

(Footnote continued.)

The Court shares the Magistrate Judge's skepticism regarding the prosecution's suggestion that use of a "taint reviewer" was adequate to protect defendants' Sixth Amendment rights. (October 12, 2005 Report and Recommendation, 11 n.3 (stating that employing a taint team is "not unlike assigning the fox to guard the henhouse.") The Court also notes that, contrary to the prosecution's assertion in its Memorandum in Opposition to Defendants' Motion to Dismiss, the prosecution has failed to identify any case from this District approving the use of a "taint reviewer," nor has the Court's own research uncovered any. Nevertheless, the Court need not reach the issue of the propriety of a "taint reviewer" today, as defendants have not yet identified any privileged document reviewed by the prosecution team.

defendants' rights under the Fourth, Fifth, and Sixth Amendments, and that the only remedy for such violations is dismissal of the indictment. The Court disagrees.

## ANALYSIS

### I. MOTION TO DISMISS INDICTMENT

Although they invoke the Fourth, Fifth, and Sixth Amendments, defendants' primary concern is that they were deprived of documents they intended to use in preparation of their defense. Notably, defendants do not appear to argue that the warrant was not supported by probable cause in violation of the Fourth Amendment, or that the warrant was otherwise invalid. In addition, defendants do not appear to raise any argument in support of a Fifth Amendment violation. Rather, defendants argue that the deprivation of the documents caused them harm by preventing them from preparing their defense, by permitting the prosecution an unfair "peek" into their legal strategy, and also by functionally granting the prosecution a "continuance" of the trial, which defendants would have opposed. These concerns are best analyzed under the Sixth Amendment.

The Sixth Amendment provides that an accused shall enjoy the right "to have the Assistance of Counsel for his defense." This right is meant to assure fairness in the adversary criminal process. *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). To establish a Sixth Amendment violation, a criminal defendant must show two things: first, that the government knowingly intruded into the attorney-client relationship; and second, that the intrusion demonstrably prejudiced the defendant or created a substantial threat of

prejudice.  *United States v. Singer*, 785 F.2d 228, 234 (8th Cir. 1985); *United States v. Morrison*, 449 U.S. 361, 366 (1980).

Identification of a Sixth Amendment violation alone does not require dismissal of the indictment.  The interests supporting the Sixth Amendment right, meant to assure fairness in the adversary criminal process, must be reconciled with society's competing interest in prosecuting criminal conduct.  *Singer*, 785 F.2d at 234.  Therefore, the appropriate remedy for a Sixth Amendment violation is not necessarily dismissal, but rather a remedy tailored to the injury suffered: "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *Morrison*, 449 U.S. at 365.

For example, in *Morrison*, the defendant had retained private counsel to represent her in a criminal proceeding.  *Id.* at 362.  Thereafter, two agents of the Drug Enforcement Agency, aware that she had been indicted and had retained counsel, sought to obtain her cooperation in a related investigation.  They met and conversed with her without the knowledge of her counsel.  During the conversation the agents disparaged the defendant's counsel and indicated that she would receive a stiff jail term if she did not cooperate.  The agents visited the defendant again, but at no time did she agree to cooperate with them, and she continued to rely upon the services of the attorney whom she had retained.  *Id.* at 362-63.  The Supreme Court, assuming arguendo that the defendant's Sixth Amendment rights were violated, held that absent a showing of any adverse consequence to the representation she received or to the proceedings leading to her conviction, dismissal of the indictment was not appropriate.  *Id.* at 366-67.

Similarly, in *Singer*, the Eighth Circuit upheld a remedy short of dismissal where the defendant asserted a Sixth Amendment violation. *Singer*, 785 F.2d at 234-37. In that case, the prosecution obtained and reviewed privileged defense documents, including documents from the defense lawyer's trial strategy file. The District Court determined that although Singer's Sixth Amendment rights had been violated, the violation did not warrant dismissal of the indictment, and instead ordered the prosecution to return the privileged documents, and prohibited the prosecuting attorney with knowledge of the privileged documents from participating in retrial of case. On appeal, the Eighth Circuit upheld the District Court's order under *Morrison*, finding that the District Court properly fashioned a remedy that removed any prejudice to the defendant. *Id.* at 237.

Therefore, even if a Sixth Amendment violation occurs, a defendant is not entitled to dismissal of the indictment if a less drastic remedy can eliminate any potential prejudice. *Morrison*, 449 U.S. at 366; *Singer*, 785 F.2d 228 at 236. Based on the circumstances of this case, the Court holds that a less drastic remedy can eliminate any potential prejudice and remedy or avoid any Sixth Amendment violation, and accordingly dismissal of the indictment is not warranted.

Here, defendants were deprived of documents they believed were necessary to prepare their defense one month before trial was initially scheduled to begin. The documents seized included documents that defendants intended to review with their lawyers at a meeting that had been scheduled to occur two days after the execution of the search warrant, as well as potentially privileged documents. The seizure of the documents clearly interfered with counsel's preparation of the defense. Execution of the

search warrant so close to trial, which denied counsel the opportunity to review the documents with their clients in confidence, could potentially prejudice defendants' rights to prepare their defense and to a fair trial.

Although the timing of the seizure before the meeting, as well as the seizure of potentially privileged documents, clearly implicates defendants' Sixth Amendment rights, the Court concludes any potential prejudice resulting from the seizure under these circumstances may be remedied by the return of the "potentially privileged" documents without review by the prosecution, and by counsel for defendants now having the opportunity to review the documents with their clients in confidence. *Morrison*, 449 U.S. at 366; *Singer*, 785 F.2d 228 at 236; *Nat'l City Trading Corp.*, 635 F.2d at 1026. Accordingly, the Court will order the prosecution to return the "potentially privileged" documents without review, and to copy the rest of the documents at its own expense and deliver a complete set of the documents in the order in which they are currently organized to the defendants. *See* Fed. R. Crim. P. 16(a)(1)(E); *United States v. Freedman*, 688 F.2d 1364, 1366 (11th Cir. 1982) (trial court has considerable discretion regarding discovery matters under Rule 16, including the discretion to determine which parties should bear the cost of copying documents). Additionally, the Court notes that if, after having reviewed the copies of the non-"potentially privileged" documents, defendants believe that the prosecution has retained documents that are covered by the attorney-client or work-product privileges, the Court will permit defendants to bring a motion regarding such documents at that time, as necessary.

Defendants' final objection to the report and recommendation is that the prosecution's conduct, in seizing the documents, functionally granted the prosecution a continuance of the trial, which defendants would have opposed. Even assuming this is the case, the trial will be "continued" no more than a few months, and defendants do not allege that this "continuance" caused them any prejudice.

### ORDER

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** defendants Heppner's and Anderson's objections [Docket No. 74] and **ADOPTS** the Report and Recommendation [Docket Nos. 71 and 72]. Accordingly, **IT IS HEREBY ORDERED** that defendants Heppner's and Anderson's Joint Motion to Dismiss [Docket No. 54] is **DENIED**.

**IT IS FURTHER ORDERED** that, to the extent the prosecution has not already complied with the Order in the Report and Recommendation, the prosecution must return those documents it has identified as "potentially privileged" without inspection, and must copy the remaining documents at its own expense and deliver the copies to the Defendants in the order in which they are currently organized.

DATED: November 23, 2005  
at Minneapolis, Minnesota.

                s/ John R. Tunheim  
                JOHN R. TUNHEIM  
                United States District Judge