UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>(1) ANTHONY HEPPNER and<br>(2) THOMAS ANDERSON,<br><br>Defendants. | Criminal No. 05-94 (JRT/FLN)<br><br><br>**ORDER ADOPTING REPORT<br>AND RECOMMENDATION OF<br>MAGISTRATE JUDGE** |

Frank Magill, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Dean S. Grau, **GRAU LAW OFFICE**, 80 South Eighth Street, Suite 4910, Minneapolis, MN 55402, for defendant Heppner.

Thomas G. Dunnwald, **DUNNWALD & PETERSON PA**, 412 South Fourth Street, Suite 1150E, Minneapolis, MN 55415, for defendant Anderson.

Defendants are charged with twenty counts of mail fraud, in violation of 18 U.S.C. §§ 2 and 1341. Defendants jointly move for a *Kastigar* hearing. Following a hearing, United States Magistrate Judge Franklin L. Noel recommended denying defendants' motion. Defendants jointly object to the Magistrate Judge's Report and Recommendation dated January 20, 2006. The Court has conducted a *de novo* review of defendants' objections pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.2(b), and for the

reasons set forth below, overrules defendants' objections and adopts the Report and Recommendation of the Magistrate Judge.

## BACKGROUND

The Indictment alleges that defendants Heppner and Anderson formed an investment club called Skyward Group and solicited individuals to become members and investors. It further alleges that from January 1999 until February 2001 defendants aided and abetted each other to devise a scheme to defraud and obtain money and property by means of materially false and fraudulent representations, which defendants knowingly caused to be sent and delivered by the United States Postal Service mail for the purpose of executing the scheme.

On June 20, 2004, Postal Inspector Agnew attempted to serve Anderson with a subpoena to appear before the Grand Jury. The subpoena requested Anderson to produce documents referring or relating to various entities, including the Skyward Group. Agnew met with Anderson at Agnew's office on July 20, 2004. Anderson claims he brought the documents with him and offered them to Agnew at that time, but that Agnew refused them, and Anderson brought the documents back home with him. Agnew denies that Anderson brought any documents with him, and also states that Anderson informed her that he would not be producing the documents. Regardless of what happened at that meeting, it is undisputed that Agnew did not take possession of the documents or review them at that time.

On August 23, 2005, Agnew sought a search warrant for Anderson's home. At that time, the trial was scheduled to begin in just over a month – on September 26, 2005. When Agnew applied for the search warrant, she knew defendants were represented by counsel, and that the trial had originally been scheduled for September 26, 2005. Moreover, Agnew acknowledged in her affidavit submitted in support of the warrant application that she believed that the execution of the warrant so close to trial might implicate the Sixth Amendment.

The search warrant was executed on August 24, 2005. At that time, and unbeknownst to Agnew, Anderson and Heppner had scheduled a meeting with their lawyers for August 26, 2005, to discuss their defense. In preparation for that meeting, Anderson's lawyer had told him to gather the documents he believed relevant to the defense. Anderson was in the process of gathering the documents at the time the documents were seized.

The search of Anderson's home yielded fifteen boxes of documents, which were seized and removed from Anderson's home. One of the boxes contained documents that were determined to be "potentially privileged" by the "taint reviewer."[1] Agnew did not review any of the potentially privileged documents. In addition, although Agnew began to review the remaining documents, she stopped all review once defendants filed their motion to dismiss.

---

[1] Agnew arranged for a "taint team," led by Postal Inspector Gloria Faust as "taint reviewer," to review any confidential or privileged documents uncovered during the execution of the search warrant to determine whether the document should be seized, and if so, to ensure that the document was segregated from the non-privileged documents seized.

Defendant then brought a motion to dismiss, arguing that the seizure violated defendants' Fourth, Fifth, and Sixth Amendment rights, and that dismissal of the indictment was the only appropriate remedy. The Court denied the motion in an Order dated November 23, 2005. As noted in the Court's Order dated November 23, 2005, defendants' primary concern was that they were deprived of documents they intended to use in preparation of their defense, which was best analyzed under the Sixth Amendment right to assistance of counsel.[2] In analyzing defendants' claims under the Sixth Amendment, the Court concluded that, while the seizure of the documents pursuant to the search warrant so close in time to the trial date "implicated" defendants' Sixth Amendment rights, the appropriate remedy was not dismissal of the indictment, but rather to tailor a remedy that would alleviate any prejudice that defendants may have suffered due to the timing of the seizure.

Therefore, the Court ordered the prosecution to return the "potentially privileged" documents without inspection, and to copy the remaining documents at its own expense and deliver the copies to the defendants in the order in which they are currently organized. The Court also noted that "if, after having reviewed the copies of the non-'potentially privileged' documents, defendants believe that the prosecution has retained documents that are covered by the attorney-client or work-product privileges, the Court will permit defendants to bring a motion regarding such documents at that time, as necessary."

---

[2] Defendants did not argue that the warrant violated the Fourth Amendment, nor did they raise any argument alleging a Fifth Amendment violation.

Defendants now seek a *Kastigar* hearing, and object to the report and recommendation.

### ANALYSIS

**I.   *KASTIGAR* HEARING**

A *Kastigar* hearing, so named in reference to the Supreme Court decision *Kastigar v. United States*, 406 U.S. 441, 459-60 (1972), is typically undertaken where a defendant is granted use and derivative use immunity, required to testify, and is later prosecuted.  In *Kastigar*, the Supreme Court held that that use and derivative use immunity are coextensive with the Fifth Amendment privilege against self incrimination, and accordingly, a defendant who is granted use and derivative use immunity cannot invoke the Fifth Amendment to prevent the prosecution from compelling his or her testimony. The Court also held that, where the prosecution grants use and derivative use immunity to a witness, requires the witness to testify about matters that may incriminate the witness, and later prosecutes the witness, the prosecution bears a "heavy" burden of proof to show that "all of the evidence it proposes to use was derived from legitimate independent sources."  *Id.* at 461-62.  The purpose of the *Kastigar* hearing is to determine whether or not coerced testimony has been used against the witness in violation of his Fifth Amendment rights.  *United States v. Kilroy*, 27 F.3d 679, 683 (D.C. Cir. 1994).

**II.   DEFENDANTS' OBJECTIONS**

Defendants seek a "*Kastigar*-like hearing" to address the asserted constitutional violations related to the seizure of the documents.  Defendants argue that the prosecution

has "benefited" from reviewing the documents seized, and if permitted to use the documents seized at trial, the prosecution "will effectively be able to pierce the defendant's Fourth, Fifth, and Sixth Amendment rights . . . ." The Court disagrees.

As an initial matter, defendants have offered no authority in support of their contention that a "*Kastigar*-like hearing" would be available to them in these circumstances, i.e., where defendants have not been granted immunity or compelled to testify.

Even assuming a *Kastigar*-like hearing would be available to them, defendants have failed to show that their rights under the Fourth, Fifth, or Sixth Amendments were violated. Defendants make the same arguments here as they made in support of their motion to dismiss. Here, as there, defendants do not argue that the warrant to seize the documents failed to comply with the requirements of the Fourth Amendment, and defendants offer no argument regarding a Fifth Amendment violation. Defendants' only remaining claim is their assertion that the seizure deprived them of their Sixth Amendment rights, however, the Court remedied any prejudice that may have resulted from the timing of that seizure in the November 23, 2005 Order.

Notably, defendants do not allege that the prosecution has failed to comply in any way with the Court's November 23, 2005 Order, which required the prosecution to return all potentially privileged documents without inspecting them, to provide defendants with copies of the remaining non-privileged documents, and to give defendants the opportunity to discuss the documents with their attorneys well in advance of trial. Further, after having had the opportunity to inspect the remaining non-privileged

documents, defendants have failed to identify, or even allege, that the prosecution reviewed any document covered by the work product or attorney-client privileges.

Finally, defendants have failed to articulate any reason why they may have suffered prejudice in light of the Court's November 23, 2005 Order, and indeed, defendants have failed to explain how a *Kastigar* hearing could be helpful to them.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** defendants Heppner's and Anderson's objections [Docket No. 90] and **ADOPTS** the Report and Recommendation [Docket Nos. 88 and 89]. Accordingly, **IT IS HEREBY ORDERED** that defendants' Joint Motion for a Kastigar Hearing [Docket No. 80] is **DENIED**.

DATED:   February 10, 2006         s/ John R. Tunheim         _
at Minneapolis, Minnesota.              JOHN R. TUNHEIM
                                        United States District Judge