# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                          Criminal No. 05-94 (JRT/FLN)

                                    Plaintiff,

                                                      **MEMORANDUM OPINION**
v.                                                       **AND ORDER**

ANTHONY HEPPNER and
THOMAS ANDERSON,

                                    Defendants.

---

Frank Magill, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Dean S. Grau, **GRAU LAW OFFICE**, 4910 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for defendant Heppner.

Thomas G. Dunnwald, **DUNNWALD & PETERSON PA**, 1150E Grain Exchange Building, 412 South Fourth Street., Minneapolis, MN 55415, for defendant Anderson.


Defendants Anthony Heppner and Thomas Anderson were convicted after a jury trial of seventeen counts of mail fraud offenses. Defendants move for a judgment of acquittal or a new trial based on insufficient evidence and *Brady* violations. Defendants also move for a mistrial and a new trial on the grounds of juror misconduct and improper outside influence. For the following reasons, the Court denies the motions.

**BACKGROUND**

The Indictment alleged that defendants Anthony Heppner and Thomas Anderson formed an investment club called Skyward Group and solicited individuals to become members and investors.  It further alleged that from January 1999 until February 2001, they aided and abetted each other to devise a scheme to defraud and obtain money and property by means of materially false and fraudulent representations, which they knowingly caused to be sent and delivered by the United States Postal Service mail for the purpose of executing the scheme.

At trial, the prosecution presented evidence showing that Anderson and Heppner were on Skyward's Board of Directors, and that they provided investors with loan agreements and membership application forms.  During the course of their scheme, approximately 1,000 individuals invested over $1.6 million with Skyward.  Several individuals who had invested with Skyward testified at trial that they understood the money they loaned to Skyward was to be invested and was not to be used by the Board of Directors in any other fashion.

The prosecution also offered evidence tending to show that beginning in May 1999, both defendants began siphoning money out of Skyward for their own personal use.  For example, Heppner used approximately $80,000 of Skyward funds to purchase a piece of land in the name Golden Hawk Holdings, a trust he controlled, and Anderson used approximately $50,000 of Skyward funds to purchase a residence in Eau Claire. The evidence at trial also tended to show that defendants made failed attempts to invest a portion of the money they raised.  For example, they provided $525,000 to a third party,

Tim Oliver ("Oliver"), to invest with another third party, Albert Pans ("Pans"), in Brussels. Soon after Oliver delivered the money to Pans, it became clear that Pans had absconded with the funds. Oliver testified at trial that he informed Heppner of the status of the Pans investment. Nevertheless, defendants sent an update to their investors, falsely representing that the investors had made a profit on the Pans investment. Defendants continued to send out false and misleading updates, and solicit funds until the spring of 2000.

Heppner and Anderson were convicted of seventeen counts of mail fraud on March 1, 2006. On March 8, 2006, the prosecution filed a letter with the Court, in which Assistant United States Attorney Frank Magill, the lawyer for the prosecution at trial, disclosed that one of the jurors contacted him after the jury verdict. In the letter, Magill stated that he was approached by a juror, Thomas Marsh, after the jury verdict and asked if he could talk to Magill about the case. In the letter, Magill stated that he told Marsh that he could not discuss the case without court approval. Magill also stated that Marsh volunteered that he knew one of the witnesses who had testified, Sam Schneider. At that point, Magill terminated the conversation, telling Marsh that he could not discuss the case with him. Schneider was one of the Skyward investors who testified at trial.

Based on Magill's disclosure, defendants moved for a new trial or a hearing to explore possible juror misconduct and improper outside influence. The Court granted the motion in part, and ordered a hearing to question Marsh. The hearing was held on April 7, 2006. Marsh appeared, and was questioned by the Court regarding his contact with Magill and his relationship with the witness, Sam Schneider. At the hearing, Marsh

testified that  he had met Schneider once, roughly two years ago, at a John Deere dealership in Plainview, Minnesota, where Schneider was working.  Marsh stated that he went to the John Deere dealership to purchase parts for his lawn mower, and that Schneider had assisted him in attempting to locate the parts.  Specifically, Schneider informed Marsh that the Plainview dealership did not carry lawn mower parts, and that Marsh would have to go to a different John Deere dealership to purchase the parts. Marsh also testified that he has had no other contact with Schneider.

When questioned why he did not disclose this information earlier, Marsh explained that he did not recognize Schneider's name from the names of witnesses provided during voir dire.  Marsha also stated that he did not recognize Schneider when he testified, although he thought Schneider looked familiar.  Rather, Marsh explained that he recognized Schneider when he saw a photograph of Schneider wearing a John Deere shirt.[1]

The Court also asked Marsh why he approached Magill.  Marsh explained that he thought the case was "interesting," and so when he saw Magill after the verdict, he went over to talk to him.  Marsh also stated that when he approached Magill, Magill said he could not talk about the case until he had permission from the Court, and at that point, Marsh "just brought up" that he had had a conversation with one of the witnesses, and then Magill ended the conversation.

---

[1] The Court provides the jury with names and photographs of testifying witnesses to aid the jury in deliberations.

**ANALYSIS**

Defendants move for a judgment of acquittal or a new trial under Federal Rules of Criminal Procedure 29 and 33, alleging insufficient evidence and *Brady* violations. Defendants also move for a mistrial and a new trial based on juror misconduct and improper outside influence.   As will be explained fully below, the Court denies the motions.

## I.   Judgment Of Acquittal

Under Rule 29(a) of the Federal Rules of Criminal Procedure, the Court "shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses."  Judgment of acquittal should be denied if "there is substantial evidence justifying an inference of guilt irrespective of any countervailing testimony that may be introduced."  *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999).  A challenge of insufficiency of the evidence must be rejected if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In making this determination, the Court looks at the evidence in the light most favorable to the verdict, and accepts as established all reasonable inferences supporting the verdict. *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002).  While the prosecution must prove every element of the offenses, the evidence "need not exclude every reasonable hypothesis of innocence, but simply be sufficient to convince the jury beyond a

reasonable doubt that the defendant is guilty." *United States v. Hawkey*, 148 F.3d 920, 923 (8th Cir. 1998).

In order to sustain a conviction for mail fraud, the prosecution must show that the defendant knowingly participated in a scheme to defraud, and that it was reasonably foreseeable that the mails would be used to effectuate the scheme. *United States v. Jolivet*, 224 F.3d 902, 907 (8th Cir. 2000). Defendants argue that the evidence presented at trial was insufficient to support their conviction. In particular, defendants contend that they lacked the requisite level of intent, and that Oliver misinformed them as to the status of their investments.

The prosecution presented substantial evidence that, based on knowing misrepresentations by defendants, several investors in Skyward entrusted Heppner and Anderson with money that they used for purposes other than they had represented to the customers. This evidence included testimony by individuals who had invested with Skyward, documents mailed to investors, and testimony by Oliver regarding his contact and communications with defendants. Although the evidence may not have excluded "every reasonable hypothesis," the Court finds that the evidence was sufficient for a reasonable jury to find each element of the prosecution's case beyond a reasonable doubt. *Hawkey*, 148 F.3d at 923. Therefore, the Court denies defendants' motion for a judgment of acquittal.

## II.     New Trial

Federal Rule of Criminal Procedure 33 permits the Court to grant a new trial "if the interests of justice so require."  The Court has "broad discretion in ruling upon a motion for new trial."  *United States v. Bennett*, 956 F.2d 1476, 1481 (8th Cir. 1992). Nonetheless, the authority to grant new trials "should be used sparingly and with caution."  *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980).

Defendants move for a new trial, asserting that the evidence was insufficient to support conviction, and also arguing that a new trial is necessary because of *Brady* violations.  For the reasons discussed above, the Court finds that the evidence presented at trial was sufficient to support defendants' conviction and declines to grant a new trial on this basis.

The Court also finds defendants' *Brady* argument to be without merit.  In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that the prosecution's failure to disclose evidence that is both favorable to the accused and material to the accused's guilt or punishment violates due process.  *See also United States v. Kime*, 99 F.3d 870, 882 (8th Cir. 1996).  *Brady* applies equally to evidence impeaching the credibility of prosecution witnesses as well as to exculpatory evidence.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  Evidence is "material" under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  'A reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995).

Here, defendants base their *Brady* claim on their assertion that they were unsuccessful in gaining access to Oliver prior to trial, and were unsuccessful in cross-examining Oliver at trial "because of his claimed lack of recollection and his failure to keep any records by which he could be examined . . . ."[2] Defendants also cite to a recent article in a Minneapolis newspaper, claiming that the article contains information that should have been disclosed by the prosecution, and further, that the article shows that the prosecution did not disclose all *Brady* information prior to trial.

First, Oliver is a private individual, and is not alleged to be an agent of the government.   Moreover, there is no allegation that Oliver destroyed documents in anticipation of litigation, or that Oliver failed to produce documents that he still possessed.   His personal lack of recollection of certain events and his failure to keep records simply do not implicate the government's duty of disclosure under *Brady*.  *See Brady*, 373 U.S. at 87.   Second, the newspaper article cited by defendants reported that Oliver is presently involved in a dispute with the Minnesota Department of Commerce regarding sales of property interests in Mexico.   Even assuming that the information in this article would be material under *Brady*, there is no allegation that the prosecution was in possession of this information, or that it was aware of Oliver's dispute with the state agency.  *See id.*   Finally, to the extent that the information would have damaged Oliver's credibility as a witness, the Court notes that the prosecution presented ample evidence aside from Oliver's testimony, including testimony from several investors, as well as

---

[2] *See* Docket No. 118 at 2.

defendants' business records and documents, to support the jury's verdict in this case. Therefore, the Court declines to order a new trial on this basis.

## III.    Juror Misconduct

Defendants assert that their Sixth Amendment right to an impartial jury was violated based on juror misconduct.  Defendants argue that the jury was tainted by extraneous information, and that they did not have an adequate opportunity at the hearing to determine the extent of the extraneous information.

Generally, to impeach a jury verdict, the defendant must (1) produce evidence that is not barred by Federal Rule of Evidence 606(b),[3] and (2) produce evidence sufficient to prove grounds recognized as adequate to overturn the verdict.  *United States v. Hall*, 85 F.3d 367, 370 (8th Cir. 1996).  Extrinsic or extraneous influences may be grounds for impeaching a verdict, which include publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outside persons.  *United States v. Bassler*, 651 F.2d 600, 602 (8th Cir. 1981).  When determining whether exposure to extraneous or extrinsic

---

[3] Federal Rule of Evidence 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror.  Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for those purposes.

information is adequate to overturn a verdict, the "inquiry is not whether the jurors 'became witnesses' in the sense that they discussed any matters not of record but whether they discussed specific extra-record facts relating to the defendant, and if they did, whether there was a significant possibility that the defendant was prejudiced thereby." *United States v. Swinton*, 75 F.3d 374, 381 (8th Cir. 1996) (quoting *United States ex rel. Owen v. McMann*, 435 F.2d 813, 818 n.2 (2d Cir. 1970)).

Here, juror Marsh testified at the April 7, 2006 hearing that he met Schneider when he working at a John Deere dealership. This meeting occurred roughly two years before trial, and was very brief: Schneider did not even sell any John Deere parts to Marsh, because his dealership did not carry them. Marsh also testified that he answered the questions during voir dire to the best of his ability at the time, because he did not recognize Schneider's name. The Court finds Marsh's testimony at the hearing credible.

Based on Marsh's testimony, the Court finds that defendants' Sixth Amendment to an impartial jury was not violated. First, there is nothing in the record that demonstrates that Marsh actually discussed the fact that he knew Schneider with the jury. Moreover, even if this fact – that one of the jurors had met one of the witnesses two years earlier while attempting to purchase lawn mower parts – had been presented to the jury, the Court finds that this fact would not have prejudiced defendants. Therefore, the Court denies defendants' motion for a mistrial and a new trial on this basis.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendants Heppner's and Anderson's Joint Motion for Hearing for New Trial or Acquittal [Docket No. 118] is **DENIED**; and

2.     Defendants Heppner's and Anderson's Joint Motion for Hearing for New Trial or a Hearing to Explore Possible Juror Misconduct and Improper Outside Influence [Docket No. 120] is **DENIED.**

DATED:     August 3, 2006                                    _____ s/ John R. Tunheim_____
at Minneapolis, Minnesota.                                             JOHN R. TUNHEIM
                                                                       United States District Judge